Robert S. Hill (SBN 276056)
HOLLAND & KNIGHT LLP
robert.hill@hklaw.com
David C. Schulte (SBN 24037456)
*Pro Hac Vice Admission*
david.schulte@hklaw.com
Sara S. Staha (SBN 24088368)
*Pro Hac Vice Admission*
Sara.staha@hklaw.com
Morgan J. Delabar (SBN 24116625)
*Pro Hac Vice Admission*
morgan.delabar@hklaw.com
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: 214-964-9421
Facsimile: 214-964-9501


*Attorneys for Plaintiff –Cellular South, Inc.,
See page below for additional counsel*

Heidi L. Keefe
hkeefe@cooley.com
Reuben H. Chen
rchen@cooley.com
Alexandra Leeper
aleeper@cooley.com
Andrew C. Mace
amace@cooley.com
Matthew J. Brigham
mbrigham@cooley.com
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
650-843-5000 (telephone)
650-849-7400 (facsimile)

Eamonn Gardner (310834)
egardner@cooley.com
COOLEY LLP
1144 15th Street
Suite 2300
Denver, CO 80202-2686
720-566-4000 (telephone)

*Attorneys for Defendant –Google LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| CELLULAR SOUTH, INC., <br><br> Plaintiff(s), <br><br> vs. <br><br> GOOGLE, LLC, <br><br> Defendant(s). | Case Number: 4:25-cv-01487-YGR <br><br> **STIPULATION AND ~~[PROPOSED]~~ ORDER PARTIES AGREED PROTOCOL RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Pursuant to Civil L.R. 7-11, this Stipulation is entered into by and between Plaintiff Cellular South Inc. ("CSI") and Defendant Google, LLC ("Google") (collectively "the Parties") by and through their respective counsel, with reference to the following:

WHEREAS, the undersigned counsel represent Plaintiff and Defendant in the above-captioned case before the Court;

WHEREAS, the Parties have negotiated in good-faith and agreed that the discovery of electronically stored information in this matter should be governed as described below;

THEREFORE, IT IS HEREBY STIPULATED that the Parties, acting by and through their counsel of record, stipulate and respectfully request the Court enter an order in accordance with the following:

### 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and this Court's Guidelines for the Discovery of Electronically Stored Information, subject to the parties' Protective Order and any other applicable orders and rules. This Order streamlines ESI production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

### 2. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of Electronically Stored Information.

### 3. PROPORTIONALITY AND COST-SHIFTING

Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information consistent with Fed. R. Civ. P. 26(b)(1). This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide

STIPULATED ESI                                                    Case No. 4:25-cv-01487-YGR

preservation and discovery issues.  As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26.  A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.  Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

4.    **PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate.  To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a)    The parties have discussed the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager."  The parties shall add or remove custodians as reasonably necessary;

b)    The parties will agree on the number of custodians per party for whom e-mail will be preserved, and/or searched, reviewed, and produced;

c)    The following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved pursuant to normal business retention, but not searched, reviewed, or produced:

1.    backup systems and/or tapes used for disaster recovery; and

2.    systems no longer in use that cannot be accessed.

d)    Among the sources of data the parties agree are not reasonably accessible or not proportional to the needs of the case, the parties agree not to preserve, search, review, or produce the following:

1.    voice messages;

2.    data stored on mobile devices, personal digital assistants, and tablets;

3.    instant messaging and chat application data;

STIPULATED ESI                                                    Case No. 4:25-cv-01487-YGR

4. automatically saved versions of documents and emails;

5. deleted, slack, fragmented, or other data accessible only by forensics;

6. systems, server and network logs;

7. random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

8. on-line access data such as temporary internet files, history, cache, cookies, and the like;

9. dynamic fields of databases or log files that are not retained in the usual course of business; and

10. data in metadata fields that are frequently updated automatically, such as last opened dates.

e) If, during the course of discovery, a party believes it has good cause to request searching of the data sources in paragraphs c) or d), the parties shall discuss in good faith but the requested party reserves all rights to object to such searching.

**5. SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer in order to identify ESI that is subject to production in discovery.

General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence.

To obtain email or other forms of electronic correspondence,[1] the parties must propound specific email production requests for them. Such production requests shall only be propounded for specific issues, rather than general discovery of a product or business. Email production

---

[1] As discussed on the parties' meet and confer, Google does not have to propound specific email requests on CSI for the following custodians: Wade Smith, Hu Meena, and Greg Sandifer. If Google seeks email production beyond these custodians, the procedures herein apply.

STIPULATED ESI                                                      Case No. 4:25-cv-01487-YGR

requests shall identify the custodian or general job titles or descriptions of custodians, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms, and proper timeframe.  The parties reserve the right to object to the designation of a custodian and/or that the description of custodian is not specific enough.

Each requesting party shall limit its email production requests to a total of seven custodians per producing party for all such requests.  The parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.   The Court encourages the parties to confer on a process to test the efficacy of the search terms. Each requesting party shall limit its email production requests to a total of seven search terms per custodian per party.  The search terms shall be narrowly tailored to particular issues.  Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.  A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term.  A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are synonyms or variants of the same word.. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.  Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

The parties have agreed to filter out ESI that is not subject to discovery.  Each party will use its best efforts to filter out system files, unprocessable files, non-human generated files, application executable files, Bin files, PSTs, archive files, P7S files, video media files and digital

audio files through a commercially recognized hash identification process or other filtering methods. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

A party is required to produce only a single copy of a responsive document, and a party may de-duplicate responsive ESI across custodial and non-custodial sources. To the extent a party produces email, a party may also de-duplicate email threads and attachments as follows: In an email thread, only the most inclusive responsive email in a thread will be produced. The parties agree that removal of available lesser-included emails from potential production will reduce all parties' costs of document review, production, and litigation-support hosting, and when producing the most inclusive email in a thread, the parties need not also produce lesser-included emails in the thread, unless a lesser-included email includes a unique responsive attachment. An attachment is a file associated with an email for retention and storage as a single message unit.

Nothing in this Protocol shall be construed or interpreted as precluding a producing party from identifying, collecting, searching or performing review and analysis, including the use of TAR, to determine if a document is in fact responsive to the requesting party's request or is privileged or otherwise protected. Further, any document that is in good faith reasonably deemed not responsive to the requesting party's request, or is privileged or otherwise protected, may be withheld.

Hyperlinks are not attachments and the extent to which linked content is collected, reviewed and produced will depend primarily on whether it independently meets the collection and search criteria for this action, the linked content is within the possession, custody, or control of the producing party, is responsive and not privileged, and is not otherwise subject to any other limitations in this Order. To the extent linked documents are produced, they will be produced in the form they exist at the time of collection.

If applicable, no provision of this Order affects the inspection or production of source code which will be collected and made available consistent with the Protective Order governing this case.

### 6. PRODUCTION FORMATS

The parties agree to produce documents in TIFF file format. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process. Further details regarding the production format and metadata are included in Appendix A.

### 7. DOCUMENTS PROTECTED FROM DISCOVERY

a) Nothing in this Agreement shall be interpreted to require disclosure of non-responsive information or responsive information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

b) Nothing in this Agreement shall be construed or interpreted as precluding a producing party from performing review and analysis, including the use of Technology Assisted Review ("TAR"), to determine if a document is in fact relevant to the requesting party's request or is privileged or otherwise protected. Further, any document that is in good faith reasonably deemed not relevant to the requesting party's request, or is privileged or otherwise protected, may be withheld.

### 8. PRIVILEGE LOG

If a party reasonably determines that one or more responsive documents are not discoverable because they are protected by the attorney-client privilege or work product doctrine, or otherwise not discoverable on the basis of a recognized protection or privilege (collectively, the "Privileges" and each a "Privilege"), the party shall log an entry for each document or each

STIPULATED ESI                                                  Case No. 4:25-cv-01487-YGR

category of documents withheld for Privilege. A party may produce a metadata log for some or all of the documents being withheld and the party receiving the log may request additional information for a reasonable number of documents if it cannot in good faith assess the basis for the Privilege claim. Notwithstanding the foregoing, a party is not required to log communications with trial counsel after the date the complaint in this action was filed or documents that post-date the complaint and constitute work product prepared in connection with this action.

**9.      MODIFICATION**

This Order may be modified by agreement of the parties.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.


Dated: March 24, 2026         */s/ Robert S. Hill*
_____

                              Counsel for Plaintiff


Dated: March 24, 2026         */s/ Heidi L. Keefe*
_____

                              Counsel for Defendant

**SIGNATURE ATTESTATION**

I hereby attest that signatories listed above, in the filing of this document has been obtained from each of the other signatories.

Dated: March 24, 2026                By:  */s/ Robert S. Hill*

                                          Robert S. Hill (SBN 276056)

                                          *Attorney for Plaintiff Cellular South, Inc.*


PURSUANT TO STIPULATION, IT IS SO ORDERED.


 Dated:   April 14, 2026              _____
                                      UNITED STATES DISTRICT JUDGE
                                      YVONNE GONZALEZ ROGERS

Jacob W.S. Schneider (SBN 675315)
*Pro Hac Vice Admission*
Jacob.schneider@hklaw.com
Allison M. Lucier (SBN 569193)
*Pro Hac Vice Admission*
allison.lucier@hklaw.com
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
Telephone: 617-523-2700

Anthony J. Fuga (SBN 6301658)
*Pro Hac Vice Admission*
anthony.fuga@hklaw.com
HOLLAND & KNIGHT LLP
150 North Riverside Plaza, Suite 2700
Chicago, IL 60606
Telephone: (312) 263-3600
Facsimile: (312) 578-6666

Ashley Shively (SBN 264912)
ashley.shively@hklaw.com
HOLLAND & KNIGHT LLP
560 Mission Street
San Francisco, CA 94111
415-743-6906

Walter T. Johnson (SBN 8712)
*Pro Hac Vice Admission*
wjohnson@watkinseager.com
Watkins & Eager PLLC
400 East Capitol Street
Jackson, MS 39201
(601) 965-1846

*Attorneys for Plaintiff Cellular South Inc.,*

STIPULATED ESI                                        Case No. 4:25-cv-01487-YGR

**APPENDIX A**
**PRODUCTION FORMAT AND METADATA**

1. **Production Components.** Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.txt, .dat, or .csv) and an image load file that can be loaded into commercially acceptable production software (e.g., Concordance).

2. **Image Load File** shall contain the following comma-delimited fields:  BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.** Each of the metadata and coding fields set forth below that can be extracted at the time of collection and processing without undue burden or cost shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document at the time of collection and processing without undue burden or cost, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN.  The metadata file shall be delimited according to the following characters:
   - Delimiter = ¶ (ASCII:020)
   - Text-Qualifier = þ (ASCII:254)
   - New Line = ® (ASCII:174)
   - Multi-value delimiter = ; (ASCII Code 059)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number |
| ENDBATES | Ending Bates number |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | All custodians, de-duped and primary, that are associated with a file |
| SUBJECT | Subject line of email |
| TITLE | For emails, the subject line<br><br>For non-emails, the File Name |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |

| Field Name | Field Description |
|---|---|
| AUTHOR | Original composer of document or sender of email message. |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| DATEMOD | Date an electronic document was last modified or created (format: MM/DD/YYYY) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| NATIVELINK | Link to native file (native files only) |
| TEXTLINK | Link to text files |

4. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

5. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TEXTLINK field.

6. **Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

7. **Bates Numbering.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

8. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

9. **Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such

data including any metadata therein.

10. **Native Files.** Spreadsheets (e.g., MS Excel, Google Sheets) and delimited text files (e.g. comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in either their native format or MS Excel. TIFF images need not be produced for such files unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. Unless native redactions are contemplated by the parties, if a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

11. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

12. **Production Media.** Documents shall be encrypted and produced on external hard drives, readily accessible computer(s) or other electronic media, or via FTP or other equivalent file transmittal application ("Production Media"). Encryption keys or passwords shall be sent under separate cover, contemporaneously with transmitting the encrypted Production Media. Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and [to the extent required by local law or regulation] (4) the set(s) of requests for production for which the documents are being produced.